**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 09-3950
_____

YI MING ZHENG,
Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES,
Respondent

_____

On Petition for Review of an Order of the
Board of Immigration Appeals
(Agency No. A099-074-185)
Immigration Judge:  Honorable Susan Roy

_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
July 7, 2010
Before: BARRY, GREENAWAY and STAPLETON, <u>Circuit</u> <u>Judges</u>

(Opinion filed: July 12, 2010 )
_____

OPINION
_____

PER CURIAM

        Yi Ming Zheng ("Zheng") petitions for review of a Board of Immigration Appeals

("BIA") decision upholding the Immigration Judge's ("IJ") order of removal.  For the

reasons that follow, we will deny the petition for review.

I

Zheng, a citizen of China, entered the United States without inspection in 2005. He was placed in removal proceedings and filed a request for asylum, withholding of removal, and protection under the Convention Against Torture based on his wife's forced sterilization.

In support of his application for relief, Zheng testified that his wife gave birth to a second child in 1992 and, while he was out to sea, she was forcibly sterilized. He also testified that, in 2001, his sister Lan Mei Zheng and her husband went into hiding at his home because she was pregnant with her second child, in violation of China's family planning policies. Zheng testified that he and his wife were present when family planning cadres came to take Lan Mei. He testified that he intervened and was arrested, detained for five days, and beaten with sticks. Zheng stated that the cadres made him promise to never speak of the beating and to not interfere with family planning officials again. Zheng testified that he sought medical treatment for the beating after his release. Notably, Zheng omitted any discussion of his intervention on his sister's behalf and subsequent arrest and abuse until his third asylum application. The IJ denied relief. Zheng appealed, and the BIA upheld the IJ's decision based on Zheng's lack of credibility and failure to corroborate. Zheng then filed a petition for review.

II

We have jurisdiction pursuant to 8 U.S.C. § 1252(a). Because the BIA issued its

2

own opinion, we review its decision rather than that of the IJ. See Li v. Att'y Gen., 400 F.3d 157, 162 (3d Cir. 2005). However, we also look to the decision of the IJ to the extent that the BIA deferred to or adopted the IJ's reasoning. See Chavarria v. Gonzalez, 446 F.3d 508, 515 (3d Cir. 2006). We review the Agency's factual determinations, including adverse credibility determinations, for substantial evidence, and will uphold such determinations unless any reasonable adjudicator would be compelled to reach a contrary conclusion. See Fiadjoe v. Att'y Gen., 411 F.3d 135, 153 (3d Cir. 2005). We review their legal conclusions *de novo*, subject to established principles of deference. See Smriko v. Ashcroft, 387 F.3d 279, 282 (3d Cir. 2004).

In denying relief, the IJ reasoned that Zheng was not credible and that he failed to corroborate his claims. Because Zheng's asylum application was filed in June 2005, his petition is governed by the REAL ID Act of 2005. Prior to the implementation of the REAL ID Act, minor inconsistencies that did not go to the heart of an asylum applicant's claim were insufficient to support adverse credibility determinations. See Gao v. Ashcroft, 299 F.3d 266, 272 (3d Cir. 2002). In contrast, the REAL ID Act permits credibility determinations based on, *inter alia*, inconsistencies that do not go to the heart of the alien's claim. See 8 U.S.C. § 1158(b)(1)(B)(iii). We have not applied the REAL ID Act standard in a precedential opinion. Here, because the inconsistencies identified by the IJ relate to the heart of Zheng's claims for relief, and would thus support an adverse credibility determination even under the pre-REAL ID Act standard, we need not consider

3

whether 8 U.S.C. § 1158(b)(1)(B)(iii) is consistent with due process. See Wang v. Holder, 569 F.3d 531, 538 (5th Cir. 2009) (canvassing Circuit law on the provision).

In finding Zheng incredible, the IJ relied on several discrepancies and inconsistencies in the record. First, the IJ found implausible Zheng's explanations for omitting his "other resistance" claim from his first two asylum applications: that his wife's harm was more severe, and that because the officials who beat him told him not to say anything, he was afraid to tell American officials about his sister or his arrest – even though he did not have a problem telling American officials about his wife's sterilization.[1]

In addition, the IJ identified a significant discrepancy between Zheng's earlier asylum application and his final application: in the earlier application, he stated that he had gotten word that his sister, Lan Mei, was sterilized in 2001, while he was making preparations to leave the country; later, he alleged that he had been present and tried to intervene, and was beaten by authorities as a result. The IJ also noted that his earlier applications contained no indication that Lan Mei and her husband had gone into hiding with Zheng. Finally, the IJ held that Zheng's demeanor during the removal hearing detracted from his credibility, as he repeatedly hesitated before answering yes-or-no

---

[1] The IJ noted that Zheng sought venue in New Jersey and raised the claim based on his resistance to his sister's forced sterilization only *after* the Second Circuit ruled in Lin v. United States Dep't of Justice, 494 F.3d 296 (2d Cir. 2007), that the spouses of individuals who were sterilized or forced to undergo abortions were not *per se* refugees under the INA.

4

questions, suggesting that he was trying to provide answers the IJ wanted. Given that these inconsistencies and discrepancies were substantial, and that Zheng was unable to satisfactorily explain them, we are not compelled to disagree with the Agency's adverse credibility determination.[2]

Further, the IJ reasoned that Zheng failed to adequately corroborate his claim. A denial of relief may be grounded on a failure to corroborate when "(1) the IJ identifies facts for which it is reasonable to expect the applicant to produce corroboration, (2) the applicant fails to corroborate, and (3) the applicant fails to adequately explain that failure." Chukwu v. Att'y Gen., 484 F.3d 185, 191-92 (3d Cir. 2007) (citing Abdulai v. Ashcroft, 239 F.3d 542, 554 (3d Cir. 2001)). Here, the IJ faulted Zheng for failing to obtain: (1) medical documentation that he was treated for the beating, and (2) an amended statement from his wife regarding the incident with Zheng's sister, even though the wife was allegedly present.

As to the medical evidence, Zheng argues that the IJ erred by failing to consider his explanation that he did not think such evidence would be available because he went to a "traditional doctor." However, the IJ clearly considered Zheng's explanation, as well as

---

[2] The IJ also based the adverse credibility determination on a finding that Zheng admitted lying when providing an address in Phoenix, Arizona – where he once sought venue – which turned out to be the address of a shopping center. The BIA ruled that the IJ clearly erred in that respect, as Zheng admitted only that the address was incorrect. We agree with the Board that, notwithstanding the IJ's error, the adverse credibility determination was supported by substantial evidence.

his admission that he did not even try to obtain any such documentation. Given that Zheng made no effort to get corroborating documents, despite the opportunity to do so, we are not compelled to disagree with the IJ's determination that his explanation was inadequate.

The IJ also took issue with Zheng's failure to obtain an amended statement from his wife about the incident with his sister. Instead, Zheng submitted statements from his mother and sister, Lan Mei, describing the incident. However, the IJ discounted those letters because they contained unexplained alterations and mistranslations. Aside from Zheng's undetailed argument that those alterations and mistranslations were insignificant, he has not shown that the IJ erred in her determination.

Finally, Zheng argues that he was denied due process because the IJ demonstrated bias against him. Specifically, he argues that the IJ evinced bias by (1) calling his credibility into question when he repeatedly failed to give direct answers to yes-or-no questions, and (2) nitpicking his supporting documentation, which contained mistranslations and unexplained alterations. We disagree. As to the first issue, the IJ appropriately considered Zheng's demeanor in assessing his credibility. See Chen v. Gonzales, 434 F.3d 212, 220 (3d Cir. 2005) ("[A] witness's tone and demeanor are important factors in determining credibility . . . ."). Although Zheng argues that "any reasonable person would conclude . . . that [he] was answering 'yes' using a non-lexical sound," Pet'r Br. at 14, we are not compelled to disagree with the IJ's analysis, to which

6

we afford a great degree of deference.  See Dia v. Ashcroft, 353 F.3d 228, 252 n.23 (3d Cir. 2003).  Likewise, the IJ did not deprive Zheng of a full and fair hearing merely by calling into question the value of his documentary evidence, when that evidence contained unexplained alterations and mistranslations, however minor those imperfections may have been.

Accordingly, we will deny the petition for review.